UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-82, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-82,<br><br>Plaintiff,<br><br>v.<br><br>NIKKI M. POMEROY, CLIFFORD L. CASEY, INDIVIDUALLY AND AS TRUSTEE FOR GENSTAR LTD TRUST; REPUBLIC SILVER STATE DISPOSAL, INC. DBA REPUBLIC SERVICES; ANYTIME PLUMBING; PARADISE SPA, LLC; DOE INDIVIUDALS I-X, inclusive; and ROE CORPORATIONS, I-X, inclusive,<br><br>Defendants. | Case No. 2:17-cv-00939-RFB-NJK<br><br>ORDER |

## I.  INTRODUCTION

Three contested motions come before the Court: Plaintiff's Motion to Stay Dispositive Motion Deadline or Alternatively, Motion to Reset Dispositive Motion Deadline, ECF No. 63; Plaintiff's Motion to Amend or Correct the Complaint, ECF No. 64; and Defendant Clifford Casey's Renewed Motion for Summary Judgment, ECF No. 65.

## II.  PROCEDURAL BACKGROUND

This matter arises from a nonjudicial foreclosure sale conducted under Chapter 116 of the Nevada Revised Statutes ("NRS"). ECF No. 1. Plaintiff sued Defendants on April 3, 2017, asserting the following claims: (1) Quiet Title or Declaratory Judgment against Defendant Casey;

(2) "Judicial Foreclosure" against Defendants Nikki Pomeroy, Paradise Spa, LLC, and Anytime Plumbing;[1] (3) Breach of Contract against Defendant Pomeroy; (4) Injunctive Relief against Defendant Casey. Id. Magistrate Judge Nancy Koppe set forth a Scheduling Order on June 19, 2017. ECF No. 18. The Scheduling Order set the deadline for amending pleadings for August 1, 2017. Id.

After multiple motions to amend the complaint, to dismiss the complaint, and to stay the matter (some of which were denied), the Court stayed this matter pending the resolution of a certified question pending before the Nevada Supreme Court and dismissed all pending motions without prejudice. ECF Nos. 59, 60. The Court subsequently ordered that any dispositive motions be refiled within twenty-one days of the Nevada Supreme Court's decision on the certified question. ECF No. 61. The Nevada Supreme Court issued its decision on August 2, 2018. See SFR Investments Pool 1, LLC v. Bank of New York Mellon, 422 P.3d 1248 (Nev. 2018).

Plaintiff now moves to amend the Complaint. ECF No. 64. Plaintiff also now moves to stay the dispositive motion deadline or, alternatively, to reset the dispositive motion deadline until the Court resolves the pending Motion to Amend, emphasizing that an earlier motion to amend was denied without prejudice based on the stay. ECF No. 63. Defendant Casey opposed both motions, ECF Nos. 66-67, and Plaintiff filed replies, ECF Nos. 69, 70.

Defendant Casey now moves for summary judgment. ECF No. 65. Plaintiff opposed, and Defendant Casey replied. ECF Nos. 68, 73.

### III. FACTUAL BACKGROUND

#### a. Undisputed Facts[2]

This matter concerns a property located at 54 Sawgrass Court, Las Vegas, Nevada 89113. The property sits within a community governed by a homeowners' association, the Estates at

---

[1] Plaintiff also asserted the second claim against Defendant Republic Silver State Disposal, Inc. ECF No. 1. However, Republic Silver State Disposal, Inc. has been dismissed from this matter by stipulation. ECF No. 25.

[2] The Court takes judicial notice of the documents referenced herein. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (cited with support by Koenig v. Bank of Am., N.A., 714 F. App'x 715, 716 (9th Cir. 2018)); see also Fed. R. Evid. 201(b)(2).

Spanish Trail Association ("HOA"). In 1984, the HOA recorded Covenants, Conditions, and Restrictions ("CC&Rs") that apply to the governance of the community. The CC&Rs contain, in part, the following provisions:

> A breach by an Owner of any of the covenants, conditions and restrictions contained herein shall not affect, impair, defeat or render invalid the lien, charges or encumbrance of any first Mortgage made for value which may then exist on any Lot… (Article IX, Section 7: "Mortgage Protection Re: Breach").

> A breach of any of the covenants, conditions, restrictions or other provisions of this Declaration shall not affect or impair the lien or charge of any bona fide Mortgage made in good faith and for value on any Lot; bound by the provision of this Declaration, whether such Owner's title was acquired by foreclosure or by a trustee's sale or otherwise. (Article X, Section 3: Mortgage Protection).

Defendant Pomeroy executed a promissory note on August 30, 2005 to obtain a loan for $1,330,000.00 to purchase the at-issue property. The promissory note was secured by a subsequent deed of trust ("senior deed of trust") that was recorded on September 2, 2005, in which Mortgage Electronic Registration Systems, Inc. ("MERS") was identified as the beneficiary, acting solely as nominee for the lender. Plaintiff is the current assignee of the senior deed of trust.[3]

On June 26, 2007, Defendant Pomeroy became delinquent on her payments under the senior deed of trust, causing a notice of default and election to sell under deed of trust to be recorded on behalf of Plaintiff's predecessors.

On October 12, 2007, the HOA recorded a notice of delinquent assessment lien against the property based on Defendant Pomeroy's failure to pay the related HOA dues. The HOA then recorded a notice of default and election to sell on March 26, 2008. The HOA recorded its first notice of foreclosure sale on September 9, 2008.

On March 27, 2009, Defendant Pomeroy transferred the property to Genstar Ltd Trust. The deed evidencing the transfer of the property to Genstar Ltd Trust was recorded on April 1, 2009.

///

///

---

[3] Defendant Casey assumes for purposes of the Motion for Summary Judgment, but does not concede for purposes of the matter as a whole, that Plaintiff is the current assignee.

The following day, the HOA sent the Genstar Ltd Trust a notice of delinquent HOA dues. No payment was made. But Defendant Casey began living on the property by May 27, 2009, at which time he executed a residential lease agreement with Genstar Ltd Trust.

Defendant Pomeroy filed for bankruptcy on September 22, 2009. Her bankruptcy petition fails to list the property as one in which she has any interest. Her bankruptcy petition acknowledges the promissory note as a creditor's unsecured nonpriority claim for $1,340,331.00, notating that the property was "sold by receiver." Her bankruptcy petition later clarifies that the property was assigned in April 2009 for $700,000.00. The Bankruptcy Court granted Plaintiff's loan servicer relief from the stay to foreclose on the property. The HOA never sought relief from the automatic stay.

On February 24, 2010, Genstar Ltd Trust transferred the property to the Pacifica Ltd Trust with the related deed being filed the following day. Defendant Casey is the first successor trustee of the Pacifica Ltd Trust. On April 2, 2010, the HOA sent notice of the delinquent HOA dues to the Pacific Ltd Trust. Again, no payment was made.

On April 16, 2010, a discharge order was entered in Defendant Pomeroy's bankruptcy matter.

On December 15, 2010, the HOA recorded another notice of foreclosure sale. The notice states the HOA dues were delinquent in the amount of $10,872.00. The HOA then foreclosed on the property on January 7, 2011. A foreclosure deed was subsequently recorded in favor of the HOA on February 1, 2011. HOA board members opined that the sale was on a sub-priority lien rather than a super-priority lien, stating in an email that the senior deed of trust "is still in place" if the foreclosure sale was completed but the second deed of trust was "removed."

The same day as the foreclosure sale, the Pacifica Ltd Trust transferred the property to Defendant Casey, as the trustee of the Genstar Ltd Trust. The corresponding deed was recorded on January 25, 2011.

A few weeks later, Defendant Casey and the HOA executed an agreement to allow the Genstar Ltd Trust to pay the HOA $2,000 per month, in addition to any current HOA dues, for ten months in exchange for the HOA to assign the deed back to the Genstar Ltd Trust.

On April 6, 2011, Defendant Pomeroy's bankruptcy matter was closed.

After Defendant Casey made the required payments under his February agreement with the HOA, the HOA quitclaimed the property to him on December 20, 2011.

### b. Disputed Facts

The parties dispute the extent of Defendant Casey's involvement with the Genstar Ltd Trust and the Pacifica Ltd Trust and if Defendant Casey colluded with the HOA by executing the agreement to regain title to the property after the HOA foreclosure sale.

## IV. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## V. DISCUSSION

The Court first determines if the HOA foreclosed on a sub-priority or super-priority lien. The Court then considers if the foreclosure sale violated the automatic stay in Defendant Pomeroy's bankruptcy matter. The Court then resolves the parties' arguments over the applicable statute of limitations. The Court finally considers if amendment of the Complaint would be futile.

### a. Priority of the HOA Lien

To begin, the Court address the priority status of the lien on which the HOA foreclosed. Plaintiff argues that the HOA acknowledge it foreclosed on a sub-priority lien in an email stating that the senior deed of trust "is still in place" if the foreclosure sale was completed but the second deed of trust was "removed." While the Court acknowledges that the HOA board members expressed an opinion that the foreclosure occurred on a sub-priority lien through emails, their personal opinions about the nature of the lien and the operation of NRS Chapter 116 is irrelevant. The opinion of HOA board members does not dictate the operation of Nevada law under NRS Chapter 116. NRS Chapter 116 "gives an HOA a true superpriority lien, proper foreclosure of which will extinguish a deed of trust. SFR Investments Pool 1 v. U.S. Bank, N.A., 334 P.3d 408, 419 (Nev. 2014). Plaintiff cites no law that supports its argument. And the Nevada Supreme Court has emphasized that there is one lien which has two parts not two liens, explaining that "NRS 116.3116(1) and NRS 116.31162 provide for the nonjudicial foreclosure of the whole of an HOA's lien, *not just the subpriority piece of it*." SFR Investments Pool 1, 334 P.3d at 414-15 (emphasis added). Thus, the Court finds that the lien, and its foreclosure, here included both a super-priority portion and sub-priority portion under Nevada law.

### b. Bankruptcy Stay

The Court next determines if the foreclosure sale violated the automatic stay imposed in Defendant Pomeroy's bankruptcy proceedings. In a bankruptcy action, a petitioner creates a bankruptcy estate on the filing of the petition. In re Perl, 811 F.3d 1120, 1127 (9th Cir. 2016). The estate "includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" Id. (quoting 11 U.S.C. § 541(a)(1)). The filing of the petition also imposes an "automatic stay of 'any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate….'" Id. (quoting 11 U.S.C. § 362(a)(3)). Thus, "[t]he violation of the automatic stay inquiry determines whether the debtor, in isolation, has *any* protectable legal, equitable, or possessory interest." Id. (emphasis in original) (holding the automatic stay was not violated because the petitioner had no protectable interest in the property since, prior to the filing of the petition, title to the property had been transferred, a

state court had found against petitioner in an unlawful detainer action, and a state court had entered a write of possession disfavoring petitioner). Further, while actions that violate an automatic stay in a bankruptcy proceeding are void rather than merely voidable, In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992), only debtors and trustees have standing to challenge violations of an automatic stay. See In re Franck, 19 F.3d 1440 (9th Cir. 1994); see also In re Pecan Groves of Arizona, 951 F.2d 242, 245 (9th Cir. 1991).

The Court first finds that Plaintiff does not have standing to challenge the foreclosure sale as a violation of the automatic bankruptcy stay. Plaintiff was not a party to Defendant Pomeroy's bankruptcy proceeding, was not a debtor in the proceeding, and was not a trustee in the proceeding.

Further, even if Plaintiff had standing to challenge the foreclosure sale as violating the automatic stay, the Court finds that the foreclosure sale did not violate the automatic stay in Defendant Pomeroy's bankruptcy proceedings. Prior to filing for bankruptcy, Defendant Pomeroy transferred her interests in the property to Genstar Ltd Trust. Pomeroy stated in her petition that the receiver assigned the property several months prior to the filing of the bankruptcy action for a total of $700,000.00. Besides asserting that "it is undisputed that the automatic stay applied to the property at all relevant times"—which it is not—Plaintiff offers no evidence to suggest that Defendant Pomeroy retained any protectable interest in the property after assigning it to Genstar Ltd Trust approximately six months before filing the bankruptcy petition and approximately two years before the foreclosure sale. The Court therefore finds that there is no genuine issue or material fact and finds that the foreclosure sale did not violate the automatic stay in Defendant Pomeroy's bankruptcy proceeding.

### c. Statute of Limitations

The Court now turns to the applicable statute of limitations. Accepting the allegations in the complaint as true, a court determines whether "the running of the statute is apparent on the face of the complaint." Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006) (citation omitted). A complaint may be dismissed as untimely only where "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995). For statute of limitations

calculations, time is computed from the day the cause of action accrued. Clark v. Robison, 944 P.2d 788, 789 (Nev. 1997). "A claim for declaratory relief is subject to a statute of limitations generally applicable to civil claims." Zuill v. Shanahan, 80 F.3d 1366, 1369–70 (9th Cir. 1996).

The Court first finds that, contrary to Plaintiff's assertion, Defendant Casey did not waive his right to assert a defense based on the statute of limitations. Defendant Casey argued the statute of limitations barred Plaintiff's claims in his initial Motion to Dismiss.[4] ECF No. 29. He reasserts the argument in the pending Motion for Summary Judgment based on the Court denying his previous motion without prejudice as the result of the stay entered in this matter.

### i. Claim One and Claim Two

Plaintiff asserts the first claim for quiet title and declaratory relief, seeking an order that the foreclosure sale was void or did not extinguish the senior deed of trust. Plaintiff bases the claim on alleged violations of constitutional rights and statutory rights provided in NRS Chapter 116 as well as equitable theories.[5] Plaintiff brings a judicial foreclosure claim in claim two, seeking to judicially foreclose on the senior deed of trust.

The Court finds that Plaintiff's first claim accrued no later than February 1, 2011, the date the foreclosure deed was recorded. Plaintiff filed its Complaint on April 3, 2017—over six years later. Based on the delay between the date of accrual and the date of the filing of the Complaint, all bases for Plaintiff's first claim are time barred by the three-year and the four-year statute of limitations codified in NRS 11.190 and NRS 11.220. To the extent that Plaintiff seeks to assert the survival of the senior deed of trust under statutory rights, including those provided for under NRS Chapter 116, NRS 11.190(3)(a) imposes a three-year statute of limitations. The remaining bases—constitutional and equitable challenges—fall under the four-year catch-all provision in

///

---

[4] Defendant Casey has not yet filed an answer.

[5] Plaintiff alleges that the foreclosure sale violated its due process rights, facially and as applied, and violated its rights under NRS Chapter 116. ECF No. 1. Plaintiff also alleges that Defendant Casey is not a bona fide purchaser and that tender would not have been accepted had Plaintiff attempted to pay the delinquent HOA dues. Id. Plaintiff finally alleges that the sale was commercially unreasonable. Id. While the Court would also reject these arguments, the Court need not reach their merits because they are barred by the statute of limitations.

NRS 11.220. Plaintiff filed its Complaint outside of both statute of limitations—over six years after the claim accrued. Claim one must be dismissed as a result.

To the extent that Plaintiff seeks to toll the statute of limitations due to MERS not receiving copies of the notices related to the foreclosure, the Court finds that the records do not clearly establish that MERS is the beneficiary—rather than merely the nominee beneficiary—under the deed of trust. But even if MERS was the recorded beneficiary, Plaintiff has not identified how the failure to notify MERS violates its due process rights or renders the sale void. Plaintiff fails to indicate how failure to notify MERS provides a basis to toll the statute of limitations when Plaintiff's predecessor in interest, Bank of America, received actual notice of the foreclosure sale. Plaintiff also fails to indicate how failure to notify MERS prevented Bank of America from taking actions necessary to protect its interest when actual notice was received by the Bank of America. Thus, the Court finds the statute of limitations apply as described above.[6]

The Court also finds that the alleged "collusion" between Casey and the HOA does not alter this Court's rulings. To the extent the Plaintiff could raise such a claim, it should have done so within the statute of limitations which at the latest would have run from the date of the quitclaim deed from the HOA to Casey in late 2011. Moreover, the Court finds that Plaintiff has presented no evidence of collusion to support its claim or support any basis for tolling the statute of limitations. The mere fact that the HOA reach an arrangement with Casey does not without more establish an equitable claim for unfair or inequitable foreclosure.

Additionally, to the extent Plaintiff relies on violations of the CC&Rs to assert its first claim, the Court finds that a foreclosure sale cannot be invalidated by a homeowners' association's failure to comply with a requirement in its CC&Rs. NRS 116.1104 states that, absent express statutory language to the contrary, provisions of NRS Chapter 116 "may not be varied by agreement, and rights conferred by it may not be waived." NRS Chapter 116 does not expressly

---

[6] The Court also rejects the Plaintiff's argument that the mere failure to send a notice to MERS, even if was a beneficiary required to receive notice, would somehow render the sale void or voidable as a matter of law. Plaintiff has cited to no Nevada caselaw interpreting NRS Chapter 116 to have such a strict requirement or harsh penalty as it relates to notice.

provide that a declaration can set forth additional notice requirements that, unless satisfied, negate the status of the super-priority portion of an HOA's lien. Any alleged failure of Defendants to comply with the HOA's CC&Rs is therefore not a basis upon which Plaintiff may prevail on its claim. See SFR Investments, 334 P.3d at 418–19 (holding that the bank's argument that a mortgage savings clause in the CC&Rs subordinated the HOA's super-priority lien was defeated by NRS 116.1104 and stating that "[t]he mortgage savings clause thus does not affect NRS 116.3116(2)'s application in this case").

Further, while Nevada law recognizes that "[t]he statute of limitations applies differently depending on the type of relief sought" and that "claimants retain the right to prevent future violations of their constitutional rights [through prospective relief]," City of Fernley v. State, Dep't of Tax, 366 P.3d 699, 706 (Nev. 2016), the relief Plaintiff seeks is retrospective in nature. Plaintiff crafts its relief in a manner to suggest it is prospective: whether Plaintiff can proceed on claim two to judicially foreclose on the senior deed of trust. But to so find, the Court would first need to award retrospective relief by finding that the foreclosure sale did not extinguish the senior deed of trust or that the foreclosure sale was void, meaning a deed of trust existed on which the judicial foreclosure claim could proceed. Thus, the Court finds that statutes of limitations apply as outlined above. Zuill v. Shanahan, 80 F.3d 1366, 1369–70 (9th Cir. 1996) ("A claim for declaratory relief is subject to a statute of limitations generally applicable to civil claims.").

To be sure, the Court finds that neither NRS 106.240 nor NRS 104.3118(1) extend the applicable statute of limitations to a ten-year term. NRS 106.240 does not create a statute of limitations; "NRS 106.240 creates a conclusive presumption that a lien on real property is extinguished ten years after the debt becomes due." Pro-Max Corp. v. Feenstra, 16 P.3d 1074, 1077 (Nev. 2001). Likewise, NRS 104.3118 does not govern declaratory actions related to deeds of trusts; it sets forth the statute of limitations applicable to an action brought to enforce a note.

The Court also finds that Facklam v. HSBC Bank USA for Deutsche ALT-A Sec. Mortg. Loan Tr., 401 P.3d 1068 (Nev. 2017) (en banc) is inapplicable. Facklam holds only that a statute of limitations does not bar a nonjudicial foreclosure since such a foreclosure is neither a civil nor a criminal judicial proceeding. Id. at 1070–71. Facklam does not hold that a statute of limitations

cannot bar a judicial action challenging a nonjudicial foreclosure. See id. Because Plaintiff's first claim is barred by the applicable statute of limitations and its second claim depends on the success of the first claim, the Court grants summary judgment in favor of Defendant and dismisses the two claims accordingly.

Finally, even if the Court were to reach the merits of Plaintiff's "judicial foreclosure" claim, the Court would still rule against Plaintiff. Plaintiff had no protectable interest to enforce after the HOA foreclosure in this case extinguished its interest. Plaintiff therefore had and has no right to foreclose on the property.

### ii. Claim Three

In claim three, Plaintiff asserts a breach of contract claim against Defendant Pomeroy. "[W]here contract obligations are payable by installments, the limitations statute begins to run only with respect to each installment when due, unless the lender exercises his or her option to declare the entire note due." Clayton v. Gardner, 813 P.2d 997, 999 (Nev. 1991). In Nevada, a breach of contract claim on a written contract carries a six-year statute of limitations. NRS 11.190(1); see also NRS 104.3118 (six-year statute of limitations to enforce a note). Thus, Plaintiff may only bring claim three to recover on installments falling within six years of April 3, 2017. The statute of limitations bars recovery on any unpaid installments coming due earlier.

However, because the Court grants Defendant's Motion for Summary Judgment on the claims over which the Court has original jurisdiction, the Court dismisses claim three without prejudice. See 28 U.S.C. §§ 1367(c)-(d) (allowing a district court to decline to exercise supplemental jurisdiction and tolling applicable statute of limitations for the time a state claim remained in federal court).

### iii. Claim Four

The Court turns to Plaintiff's claim for injunctive relief and finds that the claim is not a stand-alone claim but that injunctive relief is instead a form of relief. The Court dismisses the claim as a result.

**d. Amendment**

The Court finally turns to Plaintiff's Motion to Amend the Complaint. Rule 15 instructs

that courts should "freely" grant a party leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). But once a scheduling order has been entered pursuant to Rule 16, Rule 16 controls. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607–08 (9th Cir. 1992). Rule 16 imposes a "good cause" standard that "primarily considers the diligence of the party seeking the amendment. Id. at 609. "If the party was not diligent, the inquiry should end." Id. Further, under Local Rule 26-4, the moving party must also show excusable neglect to succeed on a motion to amend that was filed after the deadline set by the scheduling order. A four-factor test is used to determine if the moving party has shown excusable neglect: (1) the danger of prejudice to the opposing party, (2) the length of the delay and the potential impact on the proceedings, (3) the reason for the delay, and (4) whether the moving party acted in good faith. Branch Banking & Tr. Co. v. D.M.S.I, LLC, 871 F.3d 751, 765 (9th Cir. 2017).

The Court finds that Plaintiff has failed to show good cause or excusable neglect. Plaintiff seeks to amend the Complaint to include new parties and new claims. As to the new parties, Plaintiff seeks to add claims against the HOA. But Plaintiff was aware of the HOA and its involvement in the foreclosure sale at the time of filing the Complaint.

Turning to the proposed amended claims, in the first, Plaintiff seeks declaratory relief that the foreclosure sale is void or did not extinguish the senior deed of trust based on violations of its constitutional and statutory rights and on theories of equity. In the second proposed claim, Plaintiff seeks a declaration that it may foreclose on the senior deed of trust and assumes that the senior deed of trust was not previously extinguished. In the third proposed claim, Plaintiff asserts a claim for judicial foreclosure. The first three proposed claims substantially overlap with the allegations in the Complaint. Plaintiff merely adds additional bases to invalidate the foreclosure sale. But the bases could have been brought at the time the Complaint was filed. Further, the claims would be time-barred for the same reasons claim one and claim two in the original complaint are time-barred.

In the fourth proposed claim, Plaintiff seeks to assert a claim for equitable indemnification against the HOA. But Plaintiff bases the claim on statutory rights afforded to it by NRS Chapter 116 and by provisions in the CC&Rs—both of which Plaintiff had knowledge of at the time of filing the Complaint. Further, NRS 11.190(3) imposes a three-year statute of limitations on the

first basis. To the extent Plaintiff could bring a claim for indemnification based on the HOA violating its own CC&Rs, the claim would be time-barred by either the four-year statute of limitations found in NRS 11.220 or, at most, the six-year statute of limitations found in NRS 11.190(1)(b). Thus, Plaintiff's claim would be untimely under either statute of limitations since Plaintiff failed to file its claim within six years of the foreclosure sale.

Plaintiff lastly asserts a proposed claim for an injunction against Defendant Casey. As explained previously, an injunction is form of relief rather than a stand-alone claim.

Because Plaintiff had the knowledge necessary to bring the proposed claims against the proposed parties at the time of the filing the Complaint, the Court denies the Motion to Amend for failure to show good cause or excusable neglect. Further, the Court notes that amendment, in any event, would be futile.

### VI. CONCLUSION

**IT IS ORDERED** that Defendant Casey's Motion for Summary Judgment (ECF No. 65) is GRANTED. The Court dismisses claim one and claim two as time barred. The court dismisses claim three without prejudice, declining to exercise supplemental jurisdiction. The court dismisses claim four as it is a form of relief.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend (ECF No. 64) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay (ECF No. 63) is DENIED as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to enter judgment accordingly and close this case.

DATED: <u>March 30, 2019</u>.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**